In the Matter of JANDYRA SANTOS et al., Parents of Infants Alleged to Be Neglected.

In the Matter of JANDYRA SOUTHERN, Appellant. FREE SYNAGOGUE CHILD ADOPTION COMMITTEE, Respondent.

First Department, June 20, 1951.

George J. Todaro for appellant.

Shad Polier for respondent.

Frederick L. Kane for Catholic Home Bureau for Dependent Children, *amicus curiæ*.

*Per Curiam.* The mother of two infant girls, respectively seven and eight years of age, appeals from final order of the Domestic Relations Court which denied the mother's application to vacate a prior order of that court that the children were neglected and for a rehearing to have the children turned over to the mother as their natural guardian. The order appealed from confirms the prior order that the children are neglected, finds the mother an improper guardian and confirms the children's commitment to the Free Synagogue Child Adoption Committee, adding " no longer without prejudice to the rights of the mother."

In the prior determination committing the two girls to the Jewish social agency, the court acted on the representation of one Miss Benjamin (with whom the children had been boarded by the mother on payment of $50 a week) that the children were of Jewish faith. On this record, however, it is established by testimony and uncontested documentary evidence that such conclusion is erroneous, that the mother is a Roman Catholic and both of the children are baptized Roman Catholics. Linda was so baptized at the Holy Name Chapel of Saint Vincent's Hospital in Kansas City, Missouri, on July 13, 1944; Diane was so baptized on June 15, 1945, at Saint Aloysious Church in Kansas City, Missouri. The baptismal certificates are before the court. The children were cared for by or under the supervision of the mother in Kansas City until late in 1947 when

the mother brought them to New York after a Mrs. Jansen, also a Catholic, who had been caring for the children, had become seriously ill. In December, 1947, the mother left the children in New York to be boarded with said Miss Benjamin who was paid by the mother for their maintenance for a considerable time. Later, the mother was unable to pay and Miss Benjamin testified the mother asked her to keep the children or send them to a Catholic home. Miss Benjamin went to the department of welfare and in March, 1949, filed a petition with the Domestic Relations Court which initiated the proceedings in that court.

Subdivision 1 of section 88 of the Domestic Relations Court Act of the City of New York expressly provides that whenever a child is remanded to any duly authorized agency other than one controlled by the State or a subdivision thereof, such commitment " must be made, when practicable " to an authorized agency under the control of persons of the same religious faith as that of the child. By subdivision 5 of section 88 it is provided that the words " when practicable " as used in the section shall be interpreted as without effect if there is a proper or suitable person of the same religious faith as that of the child available for appointment as guardian or custodian, or if there is a duly authorized agency under the control of persons of the same religious faith as that of the child available and willing to assume responsibility for the custody or control of the child. Subdivision 3 of section 86 provides that where there has been a commitment under the provisions of the act and it is shown that a mistake of fact was made in adjudicating the child's religion, the court may rectify the mistake and proceed with judgment " consistent with the religion of the child ". Accordingly, under the mandatory provisions of the act, the court, after finding the children neglected and the mother an improper guardian, should have committed the children to the care of a duly authorized agency under the control of the children's religious faith.

On the facts presented herein, the legislative mandate leaves no area for judicial discretion. It was and still is practicable to give these infants to an institution under the control of persons of their religious faith in fulfillment of the statute that their " religious faith shall be preserved and protected by the Court " (N. Y. City Dom. Rel. Ct. Act, § 88, subd. 4). To this the children have a natural and legal right of which they cannot be deprived by their temporary exposure to the culture of another religion prior to the age of reason. The Catholic Home

Bureau for Dependent Children, organized to receive by commitment dependent Roman Catholic children and place them in boarding or foster homes and supervise them until they reach majority or are adopted, has filed a brief *amicus* and should be given notice of any subsequent hearing on the question of the proper custody of the children.

The order appealed from is also erroneous in another aspect. It confirmed the children's commitment to the Free Synagogue Child Adoption Committee " no longer without prejudice to the rights of the mother." We think the court should not have entered the order *with prejudice* to any further application by the mother, the natural parent of the children. She should not have been thus forever barred from any opportunity whatever to apply in the future for custody no matter what state of facts might be then disclosed.

We think, too, it was erroneous for the court to receive and consider a psychiatric report on the credibility of the mother as a witness.

The order appealed from should be reversed, without costs, and the matter remanded to the Domestic Relations Court, Children's Court Division, for further hearing and consideration in accordance with this opinion.

PECK, P. J., GLENNON, DORE and COHN, JJ., concur; SHIENTAG, J., concurs in result.

Order reversed, without costs, and the matter remanded to the Domestic Relations Court, Children's Court Division, for further hearing and consideration in accordance with the opinion herein. Settle order on notice. [See 279 App. Div. 578.]